**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

SUMMIT SPECIALTY INSURANCE COMPANY,

PLAINTIFF,

v.

MTR TRUCKING, INC., AND MICHELE KEMP, AS PERSONAL REPRESENTATIVE OF MARY MOSHIER,

DEFENDANTS.
_______________________________________/

CASE NO.:

# COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Summit Specialty Insurance Company ("Summit"), by and through its undersigned counsel, files this Complaint for Declaratory Judgment and, in support, states:

## Jurisdiction, Parties and Venue

1. This is an action for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 to declare the rights and surrounding questions of actual controversy that presently exist between Plaintiff and Defendants.

2. Plaintiff, Summit, is a foreign surplus lines insurance company incorporated in Nebraska with its principal place of business in Texas.

3. MTR Trucking, Inc. ("MTR") is a trucking company incorporated in California with its principal place of business in California.

4. Defendant Michele Kemp ("Kemp") is a citizen of Pennsylvania who is the personal representative of the Estate of her deceased mother, Mary Moshier, who was a citizen of Florida.

5. This Court has jurisdiction over this action under 28 U.S.C. § 1332(a) because it is a civil action in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

6. Though monetary damages are not sought in this declaratory judgment action, the Summit insurance policy at issue represents funds in excess of $75,000 and Kemp's prior individual settlement offers to MTR each exceeded $75,000.

7. This Court has personal jurisdiction over Defendants because they are either located in this judicial district, they have submitted to the jurisdiction of this Court, they conduct and transact business in this district and/or they conducted and transacted business during all times material to this action.

8. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to the claims at issue occurred in this district, which includes Pasco County, Florida.

**The Underlying Action**

9. On July 23, 2025, Kemp, as personal representative of the Estate of Mary Moshier, filed a wrongful death lawsuit against Rakshit Transport, Inc. ("Rakshit") in case number 2025CA002237CAAXES in the circuit court in Pasco County, Florida (the "Underlying Action"). A copy of the Underlying Complaint is attached as Exhibit 1.

10. On July 9, 2026, Kemp filed a motion for leave to amend the complaint.

11. On July 10, 2026, the court granted Kemp's motion for leave to amend the complaint and deemed the First Amended Complaint as filed on July 10, 2026. The Underlying First Amended Complaint is attached as Exhibit 2.

12. On August 16, 2026, Kemp filed another motion for leave to amend complaint, which the court granted on August 18, 2026.

13. The Second Amended Complaint for Damages and Demand for Jury Trial, which the court deemed as filed on August 16, 2026, is the operative complaint in the Underlying Action. The Underlying Second Amended Complaint is attached as Exhibit 3.

14. On May 19, 2025, Moshier was allegedly driving south on US Highway 301 approaching the intersection with US Highway 98, according to the Underlying Second Amended Complaint. *See* Exhibit 3 at ¶ 12.

15. The Underlying Second Amended Complaint alleges that "an individual (hereinafter 'driver') was driving a tractor and trailer controlled, owned, operated, and/or maintained by RAKSHIT, MTR, R DEEP, and/or C.H. ROBINSON was driving the tractor north on US Highway 301 and approached the intersection of US Highway 301 and US Highway 98 and intended to turn west across the southbound lanes of US 301 to head west on US Highway 98." Exhibit 3 at ¶ 13.

16. The Underlying Second Amended Complaint also alleges that the driver of the tractor-trailer "failed to brake in time and failed to yield the right of way and negligently pulled the tractor and the trailer into the path of oncoming traffic on US Highway 301 and specifically into the path of MOSHIER." Exhibit 3 at ¶ 15.

17. As a result of the alleged negligent braking and negligent maneuver by the driver of the tractor and trailer, there was a collision between the tractor and trailer and the

vehicle driven by Moshier that resulted in the death of Moshier (the "Accident"). Exhibit 3 at ¶ 16.

18. Count I of the Underlying Second Amended Complaint asserts a cause of action for strict vicarious liability based on the dangerous instrumentality doctrine against Rakshit as the owner of the tractor. Exhibit 3 at ¶ 18.

19. The Underlying Second Amended Complaint specifically alleges that, on May 19, 2025, "a driver was operating a tractor owned by Defendant RAKSHIT in Pasco County, Florida, with Defendant RAKSHIT's knowledge and consent." Exhibit 3 at ¶ 18.

20. Counts II, III, and IV of the Underlying Second Amended Complaint against Rakshit assert causes of action for strict vicarious liability (respondeat superior), negligence, and negligent hiring, entrustment, and retention, respectively. *See* Exhibit 3 at ¶¶ 24 – 42

21. The Underlying Second Amended Complaint asserts four counts against MTR: Count V – Strict Liability (Statutory Employment and Nondelegable Duty); Count VI – Strict Vicarious Liability (Agency); Count VII – Negligent Selection and Retention; and Count VIII – Negligence. *See* Exhibit 3 at ¶¶ 43 – 64.

22. Count V alleges that, prior to May 19, 2025, MTR entered into an agreement with C.H. Robinson Worldwide, Inc. ("C.H. Robinson") to act as a for-hire motor carrier to transport a shipment from Auburndale, Florida, to Turlock, California. *See* Exhibit 3 at ¶ 43.

23. Count V further alleges that, after entering into the contract with C.H. Robinson to transport the shipment from Florida to California, MTR entered into a lease and/or arrangement with Rakshit to lease, hire, and/or use RAKHIT's tractor and driver to transport the shipment from Florida to California. *See* Exhibit 3 at ¶ 44.

24. The remaining counts are against other Defendants, including C.H. Robinson (Count IX – Negligence); R Deep Transportation, Inc. (Count X – Negligence); and All Temp Storage, LLC (Count XI – Negligence). *See* Exhibit 3 at ¶¶ 65 – 77.

25. Count X alleges that, prior to May 19, 2025, R Deep Transportation, Inc. provided Rakshit with a trailer to transport a shipment from Florida to California. *See* Exhibit 3 at ¶ 70.

**<u>The Underlying Relevant Facts</u>**

26. C.H. Robinson brokered the load to MTR, which MTR was to pick up in Florida and deliver it to California.

27. However, MTR did not have an available tractor-trailer nearby in Florida to pick up and transport the load, so Rakshit, another authorized motor carrier, assumed responsibility for the load.

28. MTR did not lease the driver from Rakshit.

29. MTR did not lease the tractor from Rakshit.

30. Rikshit, through its driver and tractor, picked up the load in Florida and shortly thereafter was involved in the Accident in Florida.

31. The tractor involved in the accident was a 2021 Kenworth model T680 with a vehicle identification number (VIN) of 1XKYD49X4MJ434750 (the "2021 Kenworth Tractor"), according to the Florida Traffic Crash Report ("Crash Report"). *See* Crash Report, attached as Exhibit 4, at 1 of 4.

32. In corroboration with the Underlying Second Amended Complaint, the Crash Report identifies Rakshit as the owner of the 2021 Kenworth Tractor. *See*, e.g., Exhibit 3 at ¶¶ 18, 24, 29 & 38; *see also* Exhibit 4 at 2 of 4.

33. The trailer was a 2019 CIMC 53' trailer with a VIN of 527SR5328KL016563. *See* Exhibit 4 at 2 of 4.

34. The driver of Rakshit's tractor is identified as Yogesh Yogesh ("Yogesh"). See Exhibit 4 at 2 of 4.

35. The Crash Report identifies Rakshit as the "motor carrier" and lists Rakshit's USDOT Number, 3739056. *See* Exhibit 4 at 2 of 4.

**<u>Rakshit's Auto Insurer</u>**

36. Sutton Specialty Insurance Company ("Sutton") issued policy number WHIO1000002853-01 to Rakshit. A copy of the Sutton Policy is attached as Exhibit 5.

37. Sutton insures Specifically Described "Autos," which are "[o]nly those 'autos' described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any 'trailers' you don't own while attached to any power unit described in Item Three). *See* Exhibit 5, T2001 05 10 & CA 00 20 12 23.

38. The 2021 Kenworth Tractor is a specifically scheduled vehicle under Sutton's policy. *See* Exhibit 5, T3002 05 10.

39. Upon information and belief, Rikshit's insurer, Sutton, tendered its $1 million policy limit to Kemp, but Kemp has neither accepted it nor released Rakshit and its driver from liability for the Accident.

**<u>Summit's Policy Issued to MTR</u>**

40. Summitt issued a business auto commercial policy, policy number SSCS00100001150, to MTR, a California trucking company, with a policy period from August 16, 2024, to August 16, 2025 (the "Policy"). A copy of the Policy is attached as Exhibit 6.

41. The Policy identifies Covered Autos for liability with Symbol 7:

**ITEM TWO: SCHEDULE OF COVERAGES AND COVERED AUTOS**
**This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos." "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO Section of the Business Auto Coverage Form next to the name of the coverage.**

| Coverages | Covered Autos (Entry of one or more of the symbols from the Covered Auto section of the Business Auto Form shows which autos are covered autos.) | Limit The most we will pay for any one accident or loss | Premium |
|---|---|---|---|
| Liability | 7 | Limit CSL $1,000,000 | $[redacted] |

*See* Exhibit 6, SSIC CA 00 62 11 23, at 2 of 6.

42. Symbol 7 means that the Policy insures Specifically Described Autos only. The Policy states, in relevant part:

***

**COMMERCIAL AUTO**
**CA 00 01 11 20**

**BUSINESS AUTO COVERAGE FORM**

***

**SECTION I – COVERED AUTOS**

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

***

**A. Description Of Covered Auto Designation Symbols**

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| *** | | |
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |

***

*See* Exhibit 6, CA 00 01 11 20, at 1 of 13.

43. The Policy's Schedule of Covered Autos, Item Three, identifies the autos by year, make, model, and vehicle identification number (VIN):

## SCHEDULE OF COVERED AUTOS

| ITEM THREE: SCHEDULE OF COVERED AUTOS: Additional vehicles will appear on the following pages, if applicable | | | | | | Principally Garaged Location | | |
|---|---|---|---|---|---|---|---|---|
| Veh # | YEAR | MAKE and MODEL | VIN | Original Cost New (OCN) | Stated Amount | Territory | Town | State |
| 1 | 2022 | Kenworth T680 | 1XKYD49X9NJ470788 | | $0 | | Fairfield | CA |
| 2 | 2023 | Freightliner Cascadia | 3AKJHHDR0PSNW1485 | | $0 | | Fairfield | CA |
| 3 | 2021 | Peterbilt 579 | 1XPBD49X6MD753176 | | $0 | | Fairfield | CA |
| 4 | 2022 | Kenworth T680 | 1XKYD49X1NJ150865 | | $0 | | Fairfield | CA |

| Veh # | Classification | | | | Primary Rating Factor | | | |
|---|---|---|---|---|---|---|---|---|
| | Radius of Operation | Business use S=service R=retail C=commercial | Size GVW or GCW | Age Group | Liability | Physical Damage | Secondary Rating Factor | Code |
| 1 | >=1,501 Miles | | Extra Heavy Truck Tractors | | [redacted] | | [redacted] | [redacted] |
| 2 | >=1,501 Miles | | Extra Heavy Truck Tractors | | [redacted] | | [redacted] | [redacted] |
| 3 | >=1,501 Miles | | Extra Heavy Truck Tractors | | [redacted] | | [redacted] | [redacted] |
| 4 | >=1,501 Miles | | Extra Heavy Truck Tractors | | [redacted] | | [redacted] | [redacted] |

| Veh # | Coverages – Premiums, Limits & Deductibles (Absence of a deductible or limit entry in any column below means that the limit or deductible entry shown in the corresponding item on page of the declarations applies.) | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Liability | | Uninsured Motorist | | Underinsured Motorist | | Auto Med Pay | | Towing & Labor | |
| | Limit | Premium | Deductible | Premium | Deductible | Premium | Limit | Premium | Limit Per Disablement | Premium |
| 1 | $1,000,000 | $[redacted] | | $[redacted] | | Included | | $0 | | |
| 2 | $1,000,000 | $[redacted] | | $[redacted] | | Included | | $0 | | |
| 3 | $1,000,000 | $[redacted] | | $[redacted] | | Included | | $0 | | |
| 4 | $1,000,000 | $[redacted] | | $[redacted] | | Included | | $0 | | |

*See* Exhibit 6, SSIC CA 00 62 11 23, at 3 of 6.

44. The Policy states that Summit will pay all sums an "insured" must pay as damages because of "bodily injury" caused by an accident and resulting from the ownership, maintenance or use of a covered "auto."

45. Specifically, the Policy states in relevant part:

***

**SECTION II – COVERED AUTOS LIABILITY COVERAGE**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

***

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for

"bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

***

*See* Exhibit 6, CA 00 01 11 20, at 2 of 13.

46. The Policy has a Scheduled Auto Endorsement that specifically lists the same four autos that are listed in Item Three: Schedule of Covered Autos. The endorsement states:

***

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SCHEDULED AUTOS ENDORSEMENT

| Unit No. | Year | Make | Model | Vehicle Identification Number (VIN) | Cargo Coverage ($) | Garage Location City, State | Radius | Liability | Physical Damage Stated Value ($) | Effective Date |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 2022 | Kenworth | T680 | 1XKYD49X9NJ470788 | | Fairfield, CA | >=1,501 Miles | $1,000,000 | $0 | 8/16/2024 |
| 2 | 2023 | Freightliner | Cascadia | 3AKJHHDR0PSNW148 5 | | Fairfield, CA | >=1,501 Miles | $1,000,000 | $0 | 8/16/2024 |
| 3 | 2021 | Peterbilt | 579 | 1XPBD49X6MD753176 | | Fairfield, CA | >=1,501 Miles | $1,000,000 | $0 | 8/16/2024 |
| 4 | 2022 | Kenworth | T680 | 1XKYD49X1NJ150865 | | Fairfield, CA | >=1,501 Miles | $1,000,000 | $0 | 8/16/2024 |

This Policy provides coverage only for Scheduled Autos while operating within the Radius indicated above. No Scheduled Auto is covered beyond its scheduled Radius. All Scheduled Autos are required to pay a regular safety inspection in order to be a covered Scheduled Auto, which must be documented and available at the request of the Insurer.

The insured hereby represents, acknowledges and warrants that only Scheduled Autos are covered on the Policy, and that any vehicle not identified herein is no longer owned or operated on public roads, or leased by the Insured, that is not being operated under the Insured's authority, including, but not limited to the Insured's DOT number, and that the Insured no longer has any interest whatsoever in the vehicle's use or operation.

Furthermore, the Insured hereby agrees to indemnify and hold the Insurer harmless of any and all costs, attorney fees, expenses, settlement payments, judgments, or other funds expended or deemed owing by the Insurer as a result of any claims involving any vehicle not identified herein, for which the Insurer

is nevertheless required to make payment as a result of any federal or state financial responsibility filing, in the even [sic] such claim arises out of an accident that occurs during the Policy Period.

For this endorsement:

"Radius" means the distance measured from the garage location indicated on the Automobile Scheduled for each Scheduled Auto.
Any non-owned trailers must be attached to a Scheduled Auto for coverage to apply.

(1) If the "box" in the "Liability" section is filled with a checkmark, Auto Liability coverage has been requested and the associated additional premium paid.
(2) If the value indicated in the "Physical Damage/Stated Value" section, Physical Damage coverage for the Scheduled Auto has been requested for the Stated Value shown, and the associated additional Premium paid. If there is no value indicated, there is no Physical Damage coverage for the Scheduled Auto.
(3) Motor Truck Cargo coverage applies on for the Scheduled Autos as listed herein, subject to coverage, limits, and deductibles specified per the Policy.

*See* Exhibit 6, SSIC SA 01 01 23, at 1 of 1.

47. The radius of 1,501 miles referred to in the Scheduled Autos Endorsement is extended to the 48 states from the garage location of Fairfield, California, by another endorsement:

***

**EXCLUSION – VEHICLES TRAVELING BEYOND DESIGNATED RADIUS OF OPERATION**

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

The coverage territory definition is amended as follows:

This insurance does not apply to any "bodily injury" or "property damage" arising out of any covered "auto" being driven to a point more than 48 State [sic] miles distance from the place that is reported to us as the primary place

wherethe [sic] Named Insured conducts operations while being operated by the named insured and all drivers of the namedinsured [sic].

All other terms. [sic] Limits, conditions, and provisions of the policy remain unchanged.

***

*See* Exhibit 6, ASIC CA CW 0028 03 21, at 1 of 1.

48. The Policy insures scheduled drivers only and any other drivers are specifically excluded by operation of the Scheduled Drivers Endorsement. It states:

**SCHEDULED DRIVERS ENDORSEMENT**

| No. | Name | D.O.B | License Number | State | Notes |
|---|---|---|---|---|---|
| 1 | Randeep Singh | 9/18/[redacted] | | | |
| 2 | Shamsher Singh | 6/10/[redacted] | | | |
| 3 | Gurdev Chaudhary | 10/10/[redacted] | | | |
| 4 | Gulab Singh Sandhu | 4/12/[redacted] | | | |

No Coverage shall be provided under this Policy for any Auto which is being used or operated by anyone other than the driver(s) or operator(s) scheduled on the Policy. The Insured hereby warrants that each and every person scheduled on this Policy above is over the age of 23 and under the age of 65, unless such driver has been reviewed and authorized by an Underwriter and additional premium, if applicable, has been paid for such driver(s) or operator(s). New drivers and operators will not be added to this Policy until the Insured provides in writing the driver's name, date of birth, and driver's license number to the Insurer so that necessary underwriting can be performed.

Policy fees, premium charges for adding additional drivers and operators, and MVR surcharges for adding additional drivers or operators, if applicable to the Policy, are non-refundable regardless of whether the Policy is cancelled. In addition, we have the right to collect additional premium equal to 25% of the total premium due for the Policy if you fail to comply with any premium audit request made by us at any time.
Furthermore, the Insured hereby agrees to indemnify and hold the Insurer harmless for any and all costs, attorney fees, expenses, settlement payments, judgments, or other funds expended or deemed owing by the Insurer as a result of any claims involving any driver or operator not identified herein, for which the Insurer is nevertheless required to make payment as a result of any federal

or state financial responsibility filing, in the even [sic] such claim arises out of an accident that occurs during the Policy Period.

***

*See* Exhibit 6, SSIC SD 02 01 23, at 1 of 1.

49. The Policy has an MCS-90 Endorsement that states, in relevant part:

***

**Endorsement for Motor Carrier Policies of Insurance for Public Liability under Sections 29 and 30 of the Motor Carrier Act of 1980**

**FORM MCS-90**

Issued to MTR Trucking, Inc of Vacaville, CA
(Motor Carrier name) (Motor Carrier state or province)

Dated at 11:41 PM on this 16 day of August, 2024

Amending Policy Number: SSCS001000011500 Effective Date: 8/16/2024

Name of Insurance Company: Summit Specialty Insurance Company

Countersigned by: [signature]
(authorized company representative)

The policy to which this endorsement is attached provides primary or excess insurance, as indicated for the limits shown *(check only one)*:

- (●) *This insurance is primary and the company shall not be liable for amounts in excess of $ 750,000 for each accident.*
- ( ) *This insurance is excess and the company shall not be liable for amounts in excess of $______ for each accident in excess of the underlying limit of $______ for each accident.*

Whenever required by the Federal Motor Carrier Safety Administration (FMSCA), the company agrees to furnish the FMSCA a duplicate of said policy and all its endorsements. The company also agrees, upon telephone request by an authorized representative of the FMCSA, to verify that the policy is in force as of a particular date. The telephone number to call is: (619) 333-2500 .

***

**DEFINITIONS AS USED IN THIS ENDORSEMENT**

***Accident*** includes continuous or repeated exposure to conditions or which results in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

***

***Motor Vehicle*** means a land vehicle, machine, truck, tractor, trailer or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof.

***Bodily injury*** means injury to the body, sickness, or disease to any person, including death resulting from any of these.

***Environmental Restoration*** means restitution for the loss, damage, or destruction of natural resources arising out of the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, of any commodity transported by a motor carrier. This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish, and wildlife.

***Property Damage*** means damage to or loss of use of tangible property.

***Public Liability*** means liability for bodily injury, property damage, and environmental restoration.

This insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement may apply separately to each accident and any payment under the policy because of anyone accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

**SCHEDULE OF LIMITS – PUBLIC LIABILITY**

| Type of carriage | Commodity transported | January 1, 1985 |
|---|---|---|
| **(1)** For-hire (in interstate or foreign commerce, with a gross vehicle weight rating of 10,000 or more pounds). | Property (nonhazardous) | $750,000 |

***

* The schedule of limits shown does not provide coverage. The limits shown in the schedule are for information purposes only.

***

*See* Exhibit 6, Form MCS-90, at 1-3 of 3.

.

50. Summit denied defense and indemnity to MTR based on the allegations in the Underlying Action and indisputable extrinsic facts known to the insurer because the Accident involved a non-scheduled auto and a non-scheduled and excluded driver under the Policy.

**COUNT I – DECLARATORY JUDGMENT:**
**THE 2021 KENWORTH TRACTOR IS NOT A SCHEDULED AUTO SO THERE IS NO LIABILITY COVERAGE UNDER THE POLICY**

51. Summit adopts and realleges paragraphs 1 through 50 as if they are fully stated herein.

52. The 2021 Kenworth Tractor is not one of the four scheduled autos under the Policy. *See* Exhibit 6, SSIC CA 00 62 11 23 & SSIC SA 01 01 23.

53. Because the Policy insures specifically described autos only and the 2021 Kenworth Tractor is not one of them, the 2021 Kenworth Tractor involved in the Accident is not a covered auto under the Policy.

54. The allegations in the Underlying Second Amended Complaint and indisputable extrinsic evidence show that Summit has no duty to defend MTR or anyone else against the Second Amended Complaint.

55. Because there is no duty to defend, there is no duty to indemnify.

56. Summit owes no duty to defend and no duty to indemnify anyone for any claims arising out of the Accident.

WHEREFORE, Summit requests that the Court enter a judgment in favor of Summit and find that the 2021 Kenworth Tractor involved in the Accident was not a scheduled auto or a covered auto under the Policy so there is no duty to defend and no duty to indemnify anyone for the Accident and any other relief the Court deems just and proper.

**COUNT II – DECLARATORY JUDGMENT:**
**BECAUSE THE DRIVER IS NOT A SCHEDULED DRIVER, HE IS AN EXCLUDED DRIVER SO THERE IS NO LIABILITY COVERAGE**

57. Summit adopts and realleges paragraphs 1 through 50 as if they are fully stated herein.

58. The driver of the 2021 Kenworth Tractor at the time of the accident, Yogesh, is not one of the four scheduled drivers under the Policy. *See* Exhibit 6, SSIC SD 02 01 23, at 1 of 1.

59. Because Yogesh is not a scheduled driver, he is specifically excluded as a driver under the Policy. *See* Exhibit 6, SSIC SD 02 01 23, at 1 of 1.

60. The allegations in the Underlying Second Amended Complaint and indisputable extrinsic evidence show that Summit has no duty to defend MTR or anyone else against the Second Amended Complaint.

61. The allegations in the Underlying Second Amended Complaint and indisputable extrinsic evidence show that Summit has no duty to defend MTR or anyone else against the Second Amended Complaint.

62. Because there is no duty to defend, there is no duty to indemnify.

63. Summit owes no duty to defend and no duty to indemnify anyone for any claims arising out of the Accident.

WHEREFORE, Summit requests that the Court enter a judgment in favor of Summit and find that the driver at the time of the Accident was not a scheduled driver under the Policy so there is no duty to defend and no duty to indemnify anyone for the Accident and any other relief the Court deems just and proper.

**COUNT III – DECLARATORY JUDGMENT:**
**THE MCS-90 ENDORSEMENT DOES NOT APPLY TO THE ACCIDENT**

64. Summit adopts and realleges paragraphs 1 through 50 as if they are fully stated herein.

65. Yogesh was driving the tractor on behalf of Rakshit at the time of the Accident.

66. Rakshit was a for-hire motor carrier presently engaged in the business of transporting, for compensation, the goods or property of another when Rakshit's driver, Yogesh, allegedly caused the Accident.

67. MTR was not a for-hire motor carrier presently engaged in the transportation of property at the time of the Accident.

68. The MCS-90 Endorsement attached to the Policy does not apply to the Accident.

WHEREFORE, Summit requests that the Court enter a judgment in favor of Summit and find that the MCS-90 Endorsement is not triggered for the Accident so Summit has no surety obligation to pay a final judgment against MTR and any other relief the Court deems just and proper.

Dated: October 28, 2026

Respectfully submitted,

/s/ Ryan K. Hilton

RYAN K. HILTON, ESQ.
Florida Bar No.: 304610
rhilton@butler.legal
Secondary email: tbarry@butler.legal
cwhite@butler.legal
BUTLER WEIHMULLER KATZ CRAIG LLP
400 N. Ashley Drive, Suite 2300
Tampa, FL 33602
Phone: 813-281-1900
*Counsel for Plaintiff, Summit Specialty Insurance Company*